MAGER MORTGAGE CO. v. FERGUSON et al.

No. 35390.   April 7, 1953.

255 P. 2d 938.

Kavanaugh Bush, Tulsa, for plaintiff in error.

Charles Dunn, Tulsa, for defendants in error.

DAVISON, J. This is a suit to foreclose various mechanics' and materialmen's liens, brought by the assignee thereof, Mager Mortgage Company, as plaintiff, against Jess F. Rose. Rose Construction Company, Inc., James O. Ferguson, Ruby S. Ferguson and Industrial Tile Company, a corporation, as defendants. The parties will be referred to as they appeared in the trial court.

The defendant Jess F. Rose was a builder and contractor for the construction of residences. In the early part of 1950, he contracted to buy, for $800 each, a number of vacant lots in a residential addition to the city of Tulsa, Oklahoma. With two other individuals, he organized the Rose Construction Company, Inc., for the purpose of building houses on the said lots. Because of the necessity of financial assistance, he contacted the Mager Mortgage Company, a corporation. The principal stockholders in the corporation were partners in the Mager Realty Company whose office was the same as that of the mortgage company. Rose executed to the mortgage company a mortgage in the principal amount of $7,000 upon the lot here involved and the house subsequently built

thereon. The amount of the mortgage was to be advanced to Rose as the construction progressed. By about the 1st of October, 1950, some $4,300 had been advanced and the house was near completion. The major part of what remained to be done was painting, floor sanding, some masonry and hardware installation, sewer construction and landscaping.

At the time of making the mortgage, Rose gave the realty company an exclusive contract for the sale of the house. A Mr. Park was assistant secretary-treasurer of the mortgage company and, for all practical purposes, was office manager for both companies. About the 1st of October, 1950, when construction of the house had reached the stage above outlined, Rose had become financially unable to continue with its construction. This information was given to the painter, Mr. Card, who was at that time the only workman on the job. The painter contacted Mr. Park and told him what Rose had said. His testimony as to what subsequently transpired was as follows:

"Q. What did Mr. Rose tell you in regard to that? A. Well, he just told me he was out of money, which I had one check that I told him had been returned, and he said he had gone as far as he could go, and I said 'I am through too.'

"Q. Now, did you do any work after that time? A. Yes, sir.

"Q. And by whose authority did you do that? A. Mr. Park.

"Q. Did you do that personally? A. I called him on the phone and told him what Mr. Rose had told me, and he told me to go ahead and not to leave he said he did not have anybody else to go down there; and he said that he would see to it that I got my money.

"Q. Mr. Card, did he give you instructions with regard to ordering material for him? A. He told me to get what I needed to finish the job.

"Q. Did he tell you to charge it to the Rose Construction Company? A. I do not remember who he said to charge it to or just what Rose contract was, whether he said to charge it to the Rose Construction Company, but everything else was charged that way, so I suppose so, the entire job was so far as I know.

"Q. Did Jess Rose authorize you to charge anything to the Rose Construction Company after October 1st? A. No, sir.

"Q. After Mr. Rose discharged you, then you were in the employ of Mr. Parks and the Mager Mortgage Company, after that time? A. Yes, sir."

On October 9th following, the defendants James O. Ferguson and Ruby S. Ferguson purchased the property for a consideration of $11,750. They went to the office of the Mager Mortgage Company and worked out all the details with Mr. Park. A sales contract was drawn and executed. The sale was consummated on October 23rd by payment of the down payment and execution of mortgage. The deed was from the Rose Construction Company to whom title had been conveyed. Mr. Ferguson testified that at the time of closing the deal he was told that a title examination had been made, that the title was clear, and that the house would be completed in good shape and all bills would be paid; that the representations were made by Mr. Park; that had he known there were any outstanding bills, he would not have purchased the property. Mr. Park's testimony was in conflict with that of Mr. Ferguson on a number of points.

Ferguson did not know that there were outstanding unpaid bills on the construction of the house until sometime in November, when he went by the Mager Mortgage Company office to pick up some papers. He was then told of the bills and was asked to pay them, which he refused to do. The bills had been paid by, and the lien claims assigned to, the Mager Mortgage Company. This suit was brought for the purpose of foreclosing these liens. The total amount was approximately $1,000. The trial court found that W. J. Park, "as an officer of the Mager Mortgage

Company, and as agent of the Mager Realty Company, knew that Rose was insolvent and had defaulted in the construction of the house and that as a broker for the Mager Realty Company undertook, and did finish the construction of the house and sold it as to the defendant, Ferguson," Judgment was rendered for the defendants Ferguson, from which Mager Mortgage Company has appealed.

For reversal, plaintiff argues that all of the essentials of an estoppel are not here present and, for that reason, the judgment for defendants cannot stand. Those essentials are enumerated as follows:

"(1) There must exist a false representation or concealment of material facts;

"(2) It must have been made with knowledge, actual or constructive, of the facts;

"(3) The party to whom it was made must have been without knowledge of the facts;

"(4) It must have been made with the intention that it should be acted upon;

"(5) The party to whom it was made must have relied on, or acted upon it, to his prejudice."

Cited are cases, wherein this court has said that those are necessary elements of estoppel, from the early case of Bragdon v. McShea, 26 Okla. 35, 107 P. 916, to the more recent case of Fite v. Van Antwerp, 201 Okla. 26, 200 P. 2d 439. Those cases are all well founded upon sound principles of law, but in none of them are the facts similar to the case at bar.

The most nearly analogous fact situation is that in the recent case of G. A. Nichols, Inc., v. Stoddard, 206 Okla. 240, 242 P. 2d 742. Therein, the Nichols Company, in order to sell certain residential lots owned by it, represented to some prospective purchasers that an adequate sanitary sewer would be constructed to service the lots; to later prospective purchasers the representa-

tion was made that said sewer had been constructed upon other acreages owned by Nichols. Some ten or twelve years later Nichols joined with several other large property owners and built a sewage line to connect with the municipal system. The land upon which the septic tank system had been located was platted into lots and blocks and the task of leveling and grading was begun. When this work broke into and seriously impaired the septic tank operation, the original purchasers of lots, having refused to pay the $113.38 charge for connecting to the new sewage line, filed an injunction suit to prevent the destruction of the earlier system. The injunction was granted and, in affirming the judgment, this court held:

"* * * In the instant case, the property having been bought by the plaintiffs and other residents of the affected blocks upon the express representation that the sewer would serve their properties, defendants are estopped to assert that by virtue of the reservation in the dedication they could deprive the plaintiffs of the right to use the sewer, or destroy or damage it to the injury or detriment of the plaintiffs."

The same conclusion is reached upon the same line of reasoning in the case at bar. The property having been bought by the defendants upon the express representation that the house would be completed and all bills paid by plaintiff, said plaintiff is estopped to assert that, by paying the construction bills and taking assignments of the liens, it could force the defendants to repay those bills or suffer the foreclosure of the liens against their property. The record discloses that all of the essentials of an estoppel are here present.

(1) Park, as agent for the plaintiff, made a false representation that the bills were or would be paid.

(2) He had actual knowledge that some of said bills were unpaid.

(3) The Fergusons were without knowledge or means of knowledge of the true facts.

(4) Such representations were made with the intention that the Fergusons act on them.

(5) The Fergusons did act upon them by purchasing the house which they would not have purchased had the true facts been known.

These conclusions are founded upon the findings of the trial court which are supported by the clear weight of the evidence, although conflicting upon some points.

Judgment affirmed.

JOHNSON, V.C.J., and WELCH, CORN, ARNOLD, O'NEAL, WILLIAMS, and BLACKBIRD, JJ., concur.